UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRUCE ZIERHUT                                               CIVIL ACTION

VERSUS

LOUISIANA DEPARTMENT OF                          NO. 24-00008-BAJ-SDJ
CORRECTIONS, ET AL.

## RULING AND ORDER

Plaintiff, proceeding *pro se*, is an inmate presently confined at Louisiana State Penitentiary in Angola, Louisiana. (Doc. 1). Plaintiff has filed a Complaint against Defendants Louisiana Department of Corrections, Louisiana State Prison Hospital, Secretary LeBlanc, Warden Hooper, and Our Lady of the Lake Hospital, asserting that his constitutional rights were violated by Defendants' deliberate indifference to his serious medical needs. No named Defendant has been served. Plaintiff seeks compensatory and injunctive relief.

Pursuant to the screening requirements of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Magistrate Judge has now issued a **Report and Recommendation (Doc. 6, the "R&R")**, recommending that Plaintiff's claims be dismissed with prejudice. (Doc. 6 at p. 8). The R&R further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims. (*Id.*). Plaintiff has not objected to the R&R. Accordingly, the Court will adopt the R&R in part, and will refer the matter back to the Magistrate Judge for further proceedings consistent with this Order.

I. FACTUAL ALLEGATIONS

Plaintiff makes the following factual allegations in his Complaint. On February 21, 2021, after receiving a chest x-ray at the treatment center at Angola State Prison, an abdominal aortic aneurysm was discovered. (Doc. 1 at p. 6). Plaintiff alleges that a 5-centimeter abdominal aortic aneurysm ("AAA") is a life-threatening condition, and that for an AAA of that size surgery is strongly recommended. (*Id.* at p. 7). At the time of his initial x-ray, Plaintiff's aneurysm measured 7.3 centimeters. (*Id.* at p. 6). The size and location of the aneurysm were noted in Plaintiff's medical record by an unnamed medical officer. (*Id.*). Incredibly, Plaintiff was not informed of this discovery. (*Id.*). Instead, he remained unaware of this potentially serious, life-threatening condition for *two years*. (*Id.*).

In 2023, Plaintiff received an annual physical. (*Id.*). In the course of this annual physical, the attending nurse practitioner reviewed Plaintiff's medical history, where the nurse practitioner found the notation on Plaintiff's AAA. (*Id.*). Even after this discovery, Plaintiff was forced to wait an additional twenty-eight days to be seen at the University Medical Center ("UMC") in New Orleans for a follow-up appointment. (*Id.* at p. 7). At this follow-up appointment, Plaintiff was informed by a surgeon that an AAA measuring over 5 centimeters is life-threatening, and that he would have to be extremely cautious in his movements. (*Id.*). After Plaintiff's medical visit with UMC, prison officials at LSP ordered another ultrasound before concluding that Plaintiff required immediate surgery. (*Id.* at p. 8). Plaintiff was prepared for surgery,

2

and ideas. (*Id.*). He also stated that due to his mental capacity, he was and is unable to obtain the medical records necessary to make the edits called for by the Magistrate Judge's Order. (*Id.*).

### III. ANALYSIS

Because Plaintiff did not make the changes required in the Magistrate Judge's May 21 Order, the R&R recommends dismissal with prejudice. In determining whether to adopt the R&R, the Court must liberally construe Plaintiff's pleadings, and hold such pleadings to less stringent standards than those drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). In light of this liberal standard, and because this action is in its early stages, the Court adopts the R&R only in part.

As correctly noted in the R&R, actions under 42 U.S.C. § 1983 cannot be brought against non-juridical persons like the Department of Public Safety and Corrections or the Louisiana State Prison Hospital. (Doc. 6 at p. 4 (citing *Douglas v. Gusman,* 567 F. Supp. 2d 877, 892 (E.D. La. 2008)). For this reason, and as suggested in the R&R, those named Defendants will be dismissed.

The R&R also correctly instructs that to pursue such claims, Plaintiff must allege that named Defendants were personally and directly involved in his alleged mistreatment, but that Plaintiff's Complaint does not sufficiently do so. (*Id.* at p. 5 (citing *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir. 1983)). For this reason, Defendants LeBlanc and Hooper will also be dismissed.

Next, the R&R describes Plaintiff's allegations surrounding his abdominal aneurysm as "purely speculative," and concludes that such allegations cannot

4

underpin a meritorious claim. (*Id.* at p. 7). However, Plaintiff alleges that from the time of the initial diagnosis until surgery, his aneurysm grew rapidly and substantially. (Doc. 1 at p. 6). Accordingly, more stents were required to be placed than would have been necessary were Plaintiff to have received medical treatment for his life-threatening condition at an earlier stage of his illness, such as when the condition was initially diagnosed. (*Id.*). The additional stents necessarily involved a longer and more invasive surgery. Thus, Plaintiff alleges an actual injury, not a speculative one.

The R&R's analysis regarding Plaintiff's allegations concerning his life expectancy and future pain and suffering will likewise not be adopted. Plaintiff alleges that he *currently* experiences a greatly diminished quality of life. (Doc. 1 at p. 8). Plaintiff's allegations concerning his decreased life expectancy are indeed speculative to some degree, as they rely on events that have yet to pass, and require some additional support. Nevertheless, Eighth Amendment claims based on a decreased life expectancy are permissible. *See Hutchens v. State of Ala.*, 466 F.2d 507, 508 (5th Cir. 1972); *see also Farnam v. Walker*, 593 F. Supp. 2d 1000, 1005 (C.D. Ill. 2009). While Plaintiff does not provide the necessary support in his Complaint for such a claim, (*see* Doc. 1), this support may nonetheless be discovered at a later stage of this litigation. For these reasons, the Court concludes that the interests of justice will not have been served by dismissing Plaintiff's deliberate medical indifference claims at this juncture, especially given the mental infirmities, described in his

Amendment of Complaint, that allegedly prevent Plaintiff from diligently pursuing his claims. (*See* Doc. 5).

Plaintiff's Complaint alleges facts that could *potentially* support deliberate medical indifference claims against the unnamed Jane or John Doe who originally discovered the abdominal aortic aneurysm, any medical personnel who thereafter discovered the AAA while reviewing Plaintiff's medical history (to the extent those persons understood the implications of the AAA and chose to do nothing), and the prison officials who were responsible for failing to provide Plaintiff with immediate emergency surgery after the AAA grew more dangerous. (*See* Doc. 1). Given that *pro se* pleadings are to be read leniently, *Erickson,* 551 U.S. at 94, the Court concludes that this was presumably what Plaintiff had in mind in his original Complaint, when he named unknown but "relevant" staff members at the LSP Treatment Center and at Our Lady of the Lake Hospital as Defendants. (Doc. 1 at p. 4).

Given the exceptional nature of Plaintiff's claims, the noted issues with Plaintiff's mental capacity, and the as yet undiscovered facts of this case, the Court will grant Plaintiff's motion to appoint counsel, which is found in Plaintiff's self-styled "Amendment of Complaint," (Doc. 5), and will request, but will not require at this time, that one or more attorneys on the Court's Civil *Pro Bono* Counsel assist Plaintiff in this matter.

Finally, Plaintiff shall be provided with an opportunity to amend his Complaint once he receives his medical records and once he or his counsel is able to investigate said records.

## IV.  CONCLUSION

Upon de novo review, and having carefully considered Plaintiff's Complaint, the R&R, and all related filings, the Court **APPROVES IN PART** the Magistrate Judge's Report and Recommendation and the same is **ADOPTED IN PART** as the Court's opinion in this matter.

Accordingly,

**IT IS ORDERED** that Plaintiff's deliberate medical indifference claims against the Louisiana Department of Corrections and the Louisiana State Prison Hospital be and are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants LeBlanc and Hooper be and are hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, (Doc. 5), be and is hereby **GRANTED IN PART**. The Court will request that one or more attorneys on the Court's Civil *Pro Bono* Counsel signify their willingness to take on this matter.

**IT IS FURTHER ORDERED** that this matter be and is hereby referred back to the Magistrate Judge for further proceedings consistent with this Order.

Baton Rouge, Louisiana, this 6th day of December, 2024

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**